## ISAAC L. NICHOLSON, JR., et al., *vs.* SAMUEL D. SCHMUCKER, Trustee in Insolvency, etc.

*Insolvency—Unlawful Preference—Bona Fide Sale—Statute of Frauds.*

A conveyance of real estate made by a person who is adjudicated an insolvent within four months thereafter, is not void as a preference under the insolvent law, when the consideration thereof was paid prior to the date of the deed, and the same was executed in pursuance of a valid contract to make the conveyance.

Defendants, who were co-owners with N. of certain real estate, agreed to buy his interest therein for $7,000. Certain negotiable bonds belonging to defendants were in the possession of N. for safe-keeping, and it was agreed that he should take seven of these bonds in payment for the property. The deed from N. was not executed until more than·a month after the agreement. At the time the agreement was made N. had, without the knowledge of the defendants, hypothecated one of their bonds and sold another, but defendants believed N. to be solvent, and there was no intent to acquire a preference. Within four months after the execution of said deed, N. was adjudicated an insolvent, and his trustee in insolvency filed a bill to vacate the conveyance, as containing an unlawful preference. *Held*, that the deed did not create such preference, but was a *bona fide* conveyance for a consideration paid at the time, and as such is valid under the Act of 1890, ch. 364.

In the above case the parol agreement to convey the land was not void under the Statute of Frauds, since it was fully performed on both sides.

Appeal from the Circuit Court of Baltimore City. On February 24th, 1892, Johns H. R. Nicholson, who was the surviving partner of the banking firm of J. J. Nicholson & Sons, was adjudicated an insolvent debtor, and the appellee became in due course permanent trustee of the insolvent's estate. On the 31st day of October, 1891, being less than four months prior to the filing of the petition in insolvency, the insolvent, jointly with his wife, executed to his brother, who is the appellant, Isaac L. Nicholson, Jr., a deed conveying certain real estate in Baltimote City, including an undivided interest in the bank building occupied by J. J.

Nicholson & Sons.   The deed is for a nominal consideration and is absolute in form, disclosing on its face no trust of any kind.   The testimony of Isaac Nicholson (Protestant Episcopal Bishop of Milwaukee), explaining the circumstances under which the deed was made, is set forth in the opinion of the Court.   The plaintiff's evidence in this case was to the effect that at the time the agreement for the transfer of the real estate was made, one of the bonds belonging to the defendants had been sold by J. H. R. Nicholson without their knowledge, and another had been in like manner hypothecated by him as security for a loan.   Bishop Nicholson did not then see the bonds.

The preliminary trustee in insolvency having discovered upon the records the deed from Johns to Isaac, reported the fact to the Insolvent Court and was directed to file a bill to set it aside.   Isaac having by his answer to the original bill disclosed his relation to his sisters, in the transaction, an amended bill was filed bringing them into the case as co-defendants.   The Court below (WRIGHT, J.), made a decree vacating the deed from Johns to Isaac L. Nicholson, and declaring that the property thereby sought to be conveyed was vested in the trustee in insolvency.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE and ROBERTS, JJ.

*Wm. Pinkney Whyte*, for the appellants.

*Samuel D. Schmucker* and *George Whitelock* for the appellee.

Johns H. R. Nicholson, the grantor in the deed in question, was a banker and insolvent at the time it was made, and his creditors, within four months thereafter, availed themselves of the provisions of the insolvent law by filing the petition upon which he was adjudicated an insolvent.   The deed, therefore, under section 24 of Art. 47 of the Code, must be *prima facie* regarded as having been intended to hinder, delay and defraud the creditors of the grantor.   The

burden of proof is, under the insolvent law, upon the parties to the deed to rebut the presumption of its invalidity.    The record shows that they have utterly failed to do this.

The deed is also void under section 14 of Art. 47 of the Code, as amended by chapter 364 of the Acts of 1890, which provides in substance that no conveyance executed by any banker being insolvent shall be valid if the same contain any preference, provided the grantor be proceeded against under the provisions of the insolvent law by his creditors within four months after the making of the deed.    This section of the law is aimed not only at deeds of which the sole purpose is to create a preference, but it strikes down all deeds which " *contain any preferences.*"    It is not necessary that the preference relate to the whole estate conveyed by the deed or to the entire consideration for the deed.    The preference may be small in amount, and relate to a matter which is merely incidental to the main object of the deed.    *Wolfsheimer* v. *Rivinus*, 64 Md. 230 ; *Lineweaver* v. *Slagel*, 64 Md. 488 ; *Alderdice* v. *State Bank*, 11 B. R. 398.

At the time of the conversation between Johns and Isaac in September, Johns knew his own insolvent condition, and that he had already taken and disposed of some (if not of all) of the seven bonds in question, and he therefore knew perfectly well that he was making an arrangement with Isaac to prefer his two sisters, Mrs. White and Mrs. Shriver, at the expense of his creditors at large.    Such an arrangement has been uniformly held to be a violation of the spirit and purpose of insolvent laws and to be void.    The validity of the security must be determined as of the date when it is actually given, and in the light of the then existing circumstances.    *Forbes* v. *Howe*, 102 Mass. 427 ; *Bank of Leavenworth* v. *Hunt*, 11 Wall. 391; *Arnold* v. *Maynard*, 2 Story, 349 ; *Graham, Assignee*, v. *Stark*, 3 Ben. 520 ; *Lloyd, Assignee*, v. *Strobridge*, 16 Bank. Reg. 197.

The appellants further seek to escape the operation of the insolvent law upon this deed, by claiming that it was executed in fulfillment of a previous contract of sale made at

the interview between the brothers in September. This claim cannot be maintained, because the evidence shows plainly that the understanding arrived at between the brothers at their interview in September was merely a verbal one, and that no written memorandum of it, such as is required by the Statute of Frauds to constitute a valid agreement for the sale of real estate, was ever made. *Clabaugh* v. *Byerly*, 7 Gill, 354; *Albert* v. *Winnin*, 5 Md. 77.

BRISCOE, J., delivered the opinion of the Court.

This is a proceeding in equity by Samuel D. Schmucker, trustee in insolvency of Johns H. R. Nicholson, to avoid and set aside a conveyance of certain real estate made by deed to the appellant, Bishop Nicholson, as trustee for his sisters, Mrs. White and Mrs. Shriver. Bishop Nicholson owned at the time of the purchase one-seventh of the property in his own right and held five-sevenths as trustee for his sisters, which, with the one-seventh here conveyed by his brother Johns, gave him the entire property. The bill charges, first, that the deed was made with intent to delay, hinder and defraud creditors, contrary to the insolvent law. Secondly, that it was given in payment of an antecedent debt and gives a preference against the terms of the insolvent law.

It appears from the record that the sale was made, and the consideration therefor, seven thousand dollars in bonds, was paid in September, 1891, while the deed was not executed until the 31st of October, 1891. Nicholson was adjudicated an insolvent on the 24th of February, 1892, within four months after the execution of the deed. Bishop Nicholson in his testimony explains the circumstances of the sale and of the making of the deed, substantially as follows: "I was about to move west permanently; there were two remaining pieces of property, undivided, belonging to my father's estate; I had a desire, as soon as possible, to sell them both off and close out the estate. The two pieces of property were the two spoken of in that deed; I came on

to see my brother John about the second week in September; I saw him at his office; was in town about two hours that day between the trains; stood outside his counter and talked with him over his counter.    I told him I had had inquiries about the purchase of the banking house property; the Hopkins Savings Bank people were after me about it, asking its price; also a Mr. Reed, P. J. Reed, I think his name is, and I suggested to him that I would be willing to buy out his share in that undivided estate, and buy it in the interest of my two sisters, Mary and Martha, for whom I was trustee, and I told him I would give him $7,000 for the properties as they were, and he agreed to that; I told him that he might take $7,000 of the bonds, and I specified the bonds which were then in his possession for safe keeping belonging to my two sisters; the matter was concluded that day before I went back; I told him to take the bonds, and that very soon I would have the deed made; I told him that about the first of January I would be on again and then we could settle the matter of premium, but in the meantime, the sale being *bona fide*, he might take bonds and I would take the property.    I asked him about the deeds, who should make them; he advised me to copy the deed literally, changing only the names and dates, the deed which I held from my brother, Charles G. Nicholson, covering precisely the same property.    I then copied the deed literally, changing only the names and dates.    The sum was precisely the same as in the original case of my brother, $7,000, so this was $7,000; my brother Johns said he would be glad if the girls could make a little turn out of the matter; the deeds were drawn afterwards; the exact dates I can't recall; I felt in no great hurry about the matter."

The proof further shows that the appellant had no knowledge at the time, of the financial condition of the vendor, but believed him to be absolutely solvent; that the sale was entirely *bona fide*, and not made for the purpose of indemnity for any loss or apprehended loss on the part of the vendee.    It does not appear from the evidence that

there was any fraudulent intent on the part of either the vendor or vendee. On the contrary, the *bona fides* of the transaction is fully established by the proof. By the Act of 1890, chap. 364, amendatory of Code, Art. 47, such sales are specially excepted from the provisions of our insolvent laws. This Act provides that nothing herein shall apply so as to set aside or render invalid the lien of any such judgment, mortgage or other conveyance executed by the debtor for money *bona fide* loaned or paid at the time of the creation of such judgment, mortgage or conveyance, but such shall remain a valid and subsisting lien, although the debtor may be proceeded against, or may apply for the benefit of the insolvent law under this Act. In the case of *Hinkleman et al.* v. *Fey*, 79 Md. 112, this Court said that this Act was passed for the purpose of removing all doubt about *bona fide* loans made at the time. It is an important provision, as a merchant, banker or other person mentioned, might otherwise be unable to borrow money to enable him to meet pressing demands and thereby avert financial disaster.

It is, however, insisted that the conveyance of the real estate contains a preference, because the bonds for $7,000 given for the purchase of the property, were delivered prior to the execution of the deed, and that at the time of the sale one of the bonds which had been in possession of the vendor, had been sold by him. But to this we cannot agree. The preference at which the law is directed can only arise in case of an antecedent debt. Here there was no such debt. It appears that the bonds were transferred at the time of the sale without any knowledge that the vendor was insolvent, or contemplated insolvency. Bishop Nicholson testified that he never knew of the hypothecation of the bond, nor did he authorize it, but that he was informed that they were all in the " mutual box " at the time of the sale. In the case of *Williams* v. *Clark*, 47 Minn. 53, it was held that a conveyance of real estate by an insolvent debtor, which, standing alone, would be void as a prefer-

ence under the insolvent law, is not thus avoided if it be made pursuant to a prior valid and enforceable contract legally obligating the debtor to make the conveyance. And in *Bush* v. *Boutelle*, 156 Mass. 167, a case somewhat similar to the one now under consideration, Judge Morton, in delivering the opinion of that Court, says: "The money was lent and the security taken, for aught that appears, in good faith. It is not enough to avoid the conveyance, that the party was insolvent when it was made, and knew himself to be so, if the conveyance was not made to secure an antecedent debt, or with any intention on the part of the defendant to defeat the provisions of the insolvent law, or with reason to believe that such was the purpose of the insolvent, but was given as security for a debt then incurred." Of course it would be otherwise if the agreement to give security was executory, and at the time the security was given there was clearly an antecedent debt. *Bentley* v. *Wells*, 61 Ill. 60.

In answer to the objection made by the appelle that the agreement was void by the Statute of Frauds, we need only say that the Statute of Frauds has no application to a contract which has been fully performed on both sides, like the one in this case. *Browne on the Statute of Frauds*, sec. 116; *Ellicott* v. *Peterson's Exs.*, 4 Md. 491; *Post* v. *Corbin*, 5 N. B. R. R. 11; *Sparhawk* v. *Richards*, 12 N. B. R. R. 79; *Cook* v. *Tullis*, 18 Wall. 332; 9 N. B. R. R. 433.

Being then clearly of the opinion that the deed in question is entirely valid, and that the conveyance ought to be sustained, the decree will be reversed and the bill dismissed with costs to the appellants in both Courts.

> *Decree reversed and bill dismissed*
> *with costs in both Courts.*

(Decided June 18th, 1895.)