JOHN G. VOGLER, HENRY W. SHARPLESS AND
T. SHARPLESS, TRADING AS SHARPLESS BROS., *vs.*
HYMAN ROSENTHAL AND JACOB GOLDMAN.

*Insolvency—Effect of Adjudication to Annul Transfers of Property
Impeached by the Petition—When Preferences and Transfers
must be Vacated in Equity—Jurisdiction of the Insolvent Court—
Withdrawal of Answer Asserting Validity of Transfer of Prop-
erty by an Insolvent—Res Adjudicata—Judgment in rem.*

When a debtor is adjudicated to be insolvent upon proceedings insti-
tuted against him on the ground that certain transfers of property
were made by him for the purpose of defrauding his creditors, it is
an adjudication *in rem* which conclusively determines such transfers
to be fraudulent, and it is not necessary that they should be vacated
by a decree in equity.

If the person who holds the property, alleged by the petition in invol-
untary insolvency to have been unlawfully transferred by the debtor,
wishes to rescue the transfer from condemnation, he must interpose
and make defence in the Insolvent Court, or he will be barred by
the adjudication there pronounced, because that Court, having
jurisdiction to determine whether the transfer was fraudulent or not,
its judgment is in the nature of an adjudication *in rem* binding upon
all parties until reversed on appeal or set aside by the tribunal that
pronounced it.

Where a transfer of property by a debtor is impeached by a proceed-
ing in involuntary insolvency, and the grantee has an opportunity to
maintain in the Insolvent Court the validity of the transfer, he will
not be allowed to litigate the same question in some other forum,
after having voluntarily appeared in the Insolvent Court and aban-
doned the case and permitted the transfer to be declared fraudulent
without a contest.

Under Code, Art. 47, sec. 24, it makes no difference whether the pref-
erences given by an insolvent debtor appear upon the face of a
written instrument, or whether they are created by a payment of
money, a transfer of property or otherwise, they are all alike de-
nounced as void, and the adjudication of the debtor to be insolvent
*ipso facto* strikes them down, when they are made the basis of that
adjudication.

Where a debtor has been adjudicated insolvent upon one ground, or
where he voluntarily applies for the benefit of the insolvent law,

then his trustee must proceed in other forums to have set aside and annulled whatever fraudulent transfers, liens or preferences there may be apart from the one forming the basis of his involuntary adjudication, and the Insolvent Court is without jurisdiction to vacate them.

A petition in the Insolvent Court alleged that the debtor had made transfers of property to A and B, with intent to defraud his creditors, &c. A and B filed answers denying the allegations of the petition and asserting the validity of the transfers to them. Issues were made up for trial by jury. At the trial an order was passed allowing A and B to withdraw their answers, "without prejudice," and the debtor's answer being also withdrawn, he was adjudged to be an insolvent debtor upon the allegations of the petition. The creditors claimed the right to have the issues on the answers of A and B tried and appealed from the order allowing them to be withdrawn. *Held*,

1st. That the averments of the petition gave the Court jurisdiction over the subject-matter, which was not ousted or limited by the withdrawal of the answers.

2nd. That without any answers at all the Court had power under Code, Art. 47, sec. 24, to adjudicate the debtor to be insolvent and to annul the transfers of property.

3rd. That if A and B desired to controvert the allegations of the petition and to uphold the transfers, it was their duty to remain in the case; but upon their withdrawal there were no issues left to be tried and the debtor was properly adjudicated to be insolvent and with that adjudication these transfers were vacated.

4th. That that part of the order allowing the answers of A and B to be withdrawn "without prejudice" was inoperative, because the question as to the validity of the transfers was conclusively determined by the adjudication of insolvency.

5th. That since the petitioning creditors secured by the adjudication all that they could have obtained by a trial, they were not prejudiced by the orders allowing A and B to retire from the case.

Appeal from the Court of Common Pleas, in Insolvency (WRIGHT, J.), whose certificate of the question decided was as follows: "John G. Vogler and Henry W. Sharpless, and Townsend Sharpless, copartners, trading as Sharpless Brothers, having entered an appeal from the orders of this Court passed on October 1st, 1896, in above cause, authorizing Jacob Goldman and Hyman Rosenthal, respectively, to withdraw their answers to the petition in involuntary in-

solvency filed in this cause without prejudice, I hereby certify that the questions involved and decided by this Court and from which said appeal is taken are as follows:

" The original petition in this cause was filed by John G. Vogler and Sharpless Brothers on July 17th, 1896. On July 27th, 1896, Louis Buckner, the defendant, filed his answer to said petition; on September 1st, 1896, Jacob Goldman filed his answer to the petition of the creditors, and on September 4th, 1896, Hyman Rosenthal filed his answer to said petition.

" The case was called for trial on October 1st, 1896. In open Court, before a jury was sworn, Louis Buckner asked leave of the Court to withdraw his answer and prayer for a jury trial, and submit to be adjudged an insolvent debtor. To this application the petitioning creditors objected, and claimed that they would still have the right to proceed with the trial of the case then before a jury, because the answers of Jacob Goldman and Hyman Rosenthal would still remain in the case, even if Buckner should withdraw his answer and prayer for a jury trial and submit to be adjudicated an insolvent debtor. Whereupon the said Goldman and Rosenthal gave notice that they would withdraw their said answers and ask leave of the Court to do so immediately upon the withdrawal of Buckner's answer, prayer for a jury trial and his adjudication as an insolvent creditor, provided they could withdraw the same without prejudice; to which the petitioning creditors gave notice they would object. Thereupon Louis Buckner, by leave of the Court, withdrew his answer and prayer for a jury trial and submitted to be adjudicated an insolvent debtor, and the Court thereupon adjudicated him an insolvent debtor by an order passed on October 1st, 1896. To all of which proceedings the petitioning creditors objected, but I overruled the objections. Immediately after such adjudication of insolvency, Hyman Rosenthal and Jacob Goldman filed their respective petitions asking leave to withdraw without prejudice their respective answers to the petition filed by John G. Vogler and Sharp-

less Brothers, the petitioning creditors, praying that Louis Buckner be adjudged an insolvent debtor, and in accordance with the prayer of the petitions filed by said Rosenthal and Goldman, I signed the orders on Oct. 1st, 1896, allowing the latter to withdraw their said answers to the original creditors' petition in this cause without prejudice, and from which orders this appeal is taken. The petitioning creditors, before and after the withdrawal of Buckner's answer and prayer for a jury trial and his adjudication in insolvency, claimed the right to have the issues arising out of the answers of Jacob Goldman and Hyman Rosenthal to the original creditors' petition in insolvency then tried by a jury and determined, but I held that the withdrawal of Buckner's answer and prayer for a jury trial and adjudication in insolvency left nothing before the Court to try. The petitioning creditors objected to all of these proceedings, but I overruled the objections."

The order of the Court was "that Louis Buckner be and he is hereby adjudged an insolvent debtor, upon the allegations of the petition filed in this cause against him."

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*Martin Lehmayer* (with whom was *Edwin Harvie Smith* on the brief), for the appellant.

*Howard Bryant,* for the appellee, Goldman.

The Court declined to hear *Jacob J. H. Mitnick,* for the appellee, Rosenthal.

McSHERRY, C. J., delivered the opinion of the Court.

On the seventeenth of July, eighteen hundred and ninety-six, the appellants filed a petition in the Court of Common Pleas praying that Louis Buckner might be adjudged an insolvent debtor. The petition contained numerous paragraphs, each averring some specific act of insolvency on the

part of Buckner.   The tenth paragraph alleged that Buck-
ner had, within two weeks prior to the date of the filing of
the petition against him, made a fraudulent transfer of per-
sonal property to one Hyman Rosenthal ; and in the elev-
enth paragraph it was charged that on the twenty-ninth of
June he had made a similar transfer of other personal prop-
erty to a certain J. Goldman, with intent, in each instance,
to hinder, defraud and delay his creditors, and with a de-
sign to conceal the said property and to prevent the same
from being taken under legal process.   Buckner answered
the petition and denied its material allegations, and then
prayed that the issues arising on the petition and answer
might be tried by a jury.   Both Rosenthal and Goldman
came into the case and filed answers in which they respec-
tively controverted the averments of the tenth and eleventh
paragraphs of the petition.   Eighteen issues were thereupon
propounded by the petitioning creditors to be passed on by
a jury.   Subsequently these issues came on to be tried and
Buckner, through his attorney, asked leave in open Court
to withdraw his answer and prayer for a jury trial, to the
granting of which the petitioning creditors objected because
the answers of Rosenthal and Goldman would still remain
in the case.   Whereupon Rosenthal and Goldman gave
notice that as soon as Buckner's answer and demand for a
jury trial were withdrawn and he was adjudicated an insol-
vent, they would withdraw their answers if.they could do
so without prejudice ; and the creditors gave notice that
they would object.   The answer of Buckner and his demand
for a jury trial being then withdrawn and there being no
further defence made, he was at once adjudicated an insol-
vent debtor, and preliminary trustees were appointed.   There-
upon both Rosenthal and Goldman, pursuant to the notice
they had given, filed petitions asking leave to withdraw their
respective answers without prejudice ; and the Court passed
two orders allowing these answers to be withdrawn without
prejudice ; and to the granting of these orders the creditors
objected and from the orders when passed, they have taken

this appeal.   The creditors, both before and after the with-
drawal of Buckner's answer and prayer for a jury trial, and
before and after his adjudication as an insolvent debtor,
claimed the right to have the issues arising out of the an-
swers of Rosenthal and Goldman to the original petition,
then and there tried by a jury ; but the Judge held that the
withdrawal of Buckner's answer and prayer for a jury trial
and his adjudication as an insolvent, coupled with the an-
nouncement that Rosenthal and Goldman would retire, left
nothing before the Court to try.

Had Rosenthal and Goldman the right to withdraw their
answers?  This is the sole question in the case.   Rosenthal
and Goldman were not made parties to the proceeding
against Buckner, and no process was asked or was issued
against them; but they came in of their own accord, as they
were entitled to do, for the purpose of upholding the al-
leged fraudulent transfers of property made to them by the
insolvent.   They were under no obligation to appear if they
did not wish to contest these allegations.   Had they failed
to appear at all the adjudication of insolvency against
Buckner would have conclusively established the invalidity
of these transfers, because the unlawfulness of these trans-
fers was one of the very grounds relied on to bring Buckner
within the operation of the involuntary feature of the in-
solvent law.   When a transfer, assignment, conveyance or
other disposition of property is charged to have been fraud-
ulently made by a person who is insolvent or in contempla-
tion of insolvency, with intent to hinder creditors, and the
debtor is proceeded against under the provisions of the in-
solvent law relating to involuntary insolvency, and the trans-
fer, assignment, conveyance or other disposition complained
of is made the basis or ground upon which the machinery
of the Insolvent Court is put in motion and its jurisdiction
is invoked, and there is no contest or denial of the aver-
ments of the petition by the debtor or by the individual
holding the transferred, assigned, conveyed or otherwise
disposed of property; an adjudication that the debtor is an

insolvent and that he has committed acts of insolvency by doing the things alleged against him, of necessity, fixes his *status* and the *status* of the property and conclusively establishes the fact that the transfer, or other disposition of property assailed or impeached, was fraudulently made with intent to hinder and delay his creditors. It would be an anomaly, indeed, if a debtor could be adjudged an insolvent on the ground that he had made an illegal transfer, whilst at the same time the transfer thus made is still allowed to stand because, in fact, it is *not* an illegal transfer at all. Such a contradictory position would make the assailed transfer, which is denounced only when it conflicts with the insolvent law, sufficiently unlawful to justify an adjudication of insolvency against the debtor, though sufficiently lawful, under the same law, to protect the person to whom the transfer had been made and to withdraw the transferred property from the reach of the insolvent's creditors. As a result the transfer would be unlawful as respects the debtor, but lawful as respects the person to whom it was made; and thus the same act would at one and the same time be both lawful and unlawful, denounced and upheld.

Singular as this result may seem, it would nevertheless be entirely possible for it to occur if the adjudication of the debtor in involuntary proceedings does not determine that the allegations upon which the adjudication is founded are incontestably true. For the purpose of illustration assume a case: Suppose the debtor in this case had been proceeded against solely on the ground that he had transferred property to Rosenthal with intent to hinder and delay creditors and with a view to conceal it and place it beyond the reach of legal process; and without contest Buckner had for that cause been adjudicated an insolvent. Would not that adjudication establish the truth of the averment that he did make such a transfer with such intent? And would it not further determine that as respects the person to whom the transfer was made, the transfer was unlawful

because of the absence of good faith on his part? If, however, it would still be necessary for the trustee subsequently appointed to go into a Court of Equity, for the purpose of having the transfer annulled, and that Court should decree that the transfer was *not* made with a fraudulent intent but was *bona fide* both as respects the debtor and the transferee, you would have two flatly contradictory decisions on the same subject by two separate tribunals; and you would have this anomaly that Buckner had been declared an insolvent because he had done an act which the Insolvent Court adjudged unlawful but which the Equity Court decreed to be lawful; and therefore, either he was wrongly adjudged an insolvent or the decree sustaining the transfer was erroneous.

If the transfer or conveyance, when made, is not a prohibited transfer, it is not a ground for an adjudication against the debtor; but if, when made, it is a ground for such an adjudication, then it is so because it is an inhibited transfer. But whether it be or be not such a transfer must be determined before the debtor can be adjudged an insolvent. When, therefore, a Court having the jurisdiction to decide whether the debtor has, by a given transfer or disposal of his property to another, committed an act of insolvency, does in fact determine that the debtor did by that particular specified transfer make an unlawful disposal of his property and in consequence further adjudges the debtor to be an insolvent, the transfer or disposal decided to be unlawful and made the foundation of the insolvency proceedings and the adjudication, must of necessity fall because the adjudication itself involves and is based on the invalidity of the impeached transaction. If the individual who holds what is alleged to be an unlawful transfer of the debtor's property wishes to rescue the transfer from condemnation in an involuntary insolvency proceeding, he must interpose and make defence in the Insolvent Court or he will be forever barred by the adjudication there pronounced upon that transaction; because the Court having

jurisdiction to determine whether the thing alleged to be unlawful was or was not a fraudulent transfer or disposal of the debtor's property, having once decided that it was, its adjudication being *in rem*, or in the nature of an adjudication *in rem*, binds all the world until reversed on appeal or set aside by the tribunal that pronounced it.

This has been the uniform ruling of this Court when the transaction or instrument assailed in the petition in involuntary insolvency has been one that created a prohibited preference, whether the preference was one that was apparent on the face of the instrument or was disclosed by extrinsic evidence.   Thus in *Brown* v. *Smart et al.*, 69 Md. 320, affirmed in 145 U. S. 457, where a deed of trust for the benefit of creditors, reciting the grantor's insolvency and giving preferences, was made the basis of an involuntary insolvency proceeding, it was held that the adjudication of the grantor to be an insolvent debtor struck down the deed of trust under the 13th sec. of Art. 48 of the Code of 1860 (now sec. 14 of Art. 47 of the Code of 1888 as amended by the Act of 1896, ch. 446).   " The statute," we said, " by force of its own terms operates upon the deed and  *  *  * strikes it down from the moment the debtor is adjudicated an insolvent, the illegal preference being the basis of the adjudication ; and in such case no defence could be interposed to rescue the deed from the fate declared for it by the statute.".  And so in *Baker et al* v. *Kunkel*, 70 Md. 392, the mortgage executed by the insolvent was made the basis of the proceedings against him and when he was adjudged to be within the insolvent law because he executed it, it was stricken down by the Insolvent Court.   The mortgagee could have saved the mortgage from condemnation only by appearing to the insolvent proceedings and resisting the adjudication of the debtor to be an insolvent.   In *Willison* v. *First Nat. Bk. of Frostburg*, 80 Md. 196, the fraudulent preferences attacked were payments, and upon the adjudication of the debtor to be an insolvent, it was held that the payments were void and the trustee to be after-

wards elected was ordered to recover the money back.   In
*Dumler v. Bergman,* 79 Md., "unreported cases," 29 Atl.
Rep. 826, a bill of sale was attacked as a preference.   The
debtor filed no answer, but the grantee in the bill of sale
did.   It appeared from the evidence and finding of the jury
on the issues submitted to them that part of the expressed
consideration was an antecedent debt, and the Court upon
adjudicating the grantor to be an insolvent struck down
and annulled the bill of sale as a prohibited preference.
The cases just cited were all cases of unlawful preferences ·
and they fell under sec. 14 of Art. 47 of the Code, which
in terms declares all preferences void, " howsoever the same
may be made."   It is wholly immaterial whether the pref-
erences appear upon the face of a written instrument, or
whether they are created by a payment of money, a trans-
fer of property or otherwise, they all alike are denounced
as void ; and the adjudication of the debtor to be an insol-
vent *ipso facto,* strikes them down when they are made the
basis of that adjudication.

The tenth and eleventh paragraphs of the petition were
framed under sec. 22 of Art. 47 of the Code, as amended
by the Act of 1896, ch. 446, and it is assumed that though
Buckner has been adjudged an insolvent, the transfers com-
plained of must be treated under sec. 24 of the Article,
amended by the same Act of 1896, as only *prima facie* in-
tended to hinder and delay creditors, and that they cannot
be set aside by the Insolvent Court, but must be assailed
in another forum.   As thus put the proposition is not ten-
able.   Any deed, conveyance, gift, transfer or delivery of
goods, chattels, moneys, choses in action, lands, tenements
or other property made when the grantor or donor is in-
solvent or in contemplation of insolvency is declared by
sec. 24 to be *prima facie* intended to hinder, delay and
defraud the creditors of the person by whom the same is
made, and the burden of proof is imposed on both him and
the grantee or donee to explain the same and show the *bona
fides* thereof.   This section prescribes a new rule of evidence

which is applicable as well to deeds, conveyances, gifts and
transfers relied on as grounds in coercive insolvency pro-
ceedings to have a debtor adjudged an insolvent, as to the
same instruments and acts when attacked in suits instituted
by the insolvent's trustee after adjudication ; and in each
instance it condemns the transaction as fraudulent on its
face, and permits it to be rescued only when the grantor
and grantee or donor and donee shall cause its good faith
to appear affirmatively. And this rule of evidence under
the broad terms of the statute is operative alike in the In-
solvent Court and in a Court of Law and of Equity. As it
is obvious that the character of the acts or transactions
which are made the basis of involuntary insolvency proceed-
ings must be passed upon and as those acts and transac-
tions must be determined by the Insolvent Court to be
fraudulent within the meaning of the insolvent law before
the Court can adjudicate the debtor to be an insolvent; it
is no less apparent, that when the Insolvent Court has ad-
judged the debtor to be insolvent because, under the rule of
evidence prescribed by sec. 24, the very acts or transactions
complained of were, in the eye of the law, fraudulent and
intended to hinder and delay creditors, it must of necessity
have passed upon and decided a subject-matter expressly
within its jurisdiction, and the same question cannot be
open for investigation in some other tribunal thereafter, ex-
cept upon appeal for review by an Appellate Court. With-
out possessing the power to decide whether a given transfer
of chattels was made with intent to hinder and defraud
creditors, or with a view to conceal the property so as to
prevent it from being taken under legal process, the Insol-
vent Court would be wholly unauthorized to adjudge the
debtor an insolvent under this particular involuntary feature
of the law ; because it is only when the Court has itself or
by the aid of a jury found the fundamental fact of a fraudu-
lent transfer or concealment that it can, in the case sug-
gested and for that cause, proceed to declare the debtor an
insolvent. When that Court has found the fact which em-

powers it to adjudicate the debtor an insolvent, the fact thus
found cannot be controverted elsewhere and it becomes un-
necessary to go into any other tribunal to procure an ad-
judication precisely to the same effect.

But where a debtor has been adjudged an insolvent upon
one ground, or where he voluntarily applies for the benefit
of the insolvent law, then his trustee must proceed in other
forums to have set aside and annulled whatever fraudulent
transfers, assignments, liens or preferences there may be
apart from the one forming the basis of his involuntary ad-
judication; and the Insolvent Court is without jurisdiction
to strike them down. Under the insolvent law existing
prior to the Act of 1880, there was no involuntary feature
and whenever it became necessary to vacate an assignment
or a fraudulent preference or other prohibited transfer, the
insolvent's trustee was compelled to seek the aid of a Court
having jurisdiction over the subject-matter as in other con-
troversies. It was with reference to the state of the law
existing prior to 1880, that this Court used the language
quoted from *Purviance* v. *Glenn*, 8 Md. 206, in *Paul &
Slingluff, Trustees*, v. *Locust Point Co.*, 70 Md. 292, to this
effect, viz.: "Property belonging to the insolvent may be in
different places, or suits in equity may be necessary to va-
cate assignments; in all which cases it is manifest that the
trustee *can proceed only in the Courts* having jurisdiction
*over the subject-matter*, as in other controversies."

Now, if Rosenthal and Goldman had not withdrawn their
answers, it cannot be doubted that the Court of Common
Pleas would have had jurisdiction to try the 12th, 13th,
14th and 15th issues framed under the tenth and eleventh
paragraphs of the petition; and if that Court would have
had jurisdiction to try those issues, it would have had au-
thority upon a finding in favor of the creditors to enter up
not only an adjudication of insolvency against Buckner, but
also an adjudication that the transfers of merchandise to
Rosenthal and Goldman were fraudulent and that they had
been made to conceal the property and place it beyond the

reach of legal process.   Such an adjudication would have
been effective to vacate the transfers, because it would have
stamped them as invalid, and no resort would have been
necessary, or could have been had, to any other tribunal
for the purpose of annulling what had already been made
void.    The averments of the petition gave the Court of
Common Pleas jurisdiction over the subject-matter set forth
in the tenth and eleventh paragraphs, and the withdrawal of
the answers of Rosenthal and Goldman and of Buckner
could not oust or even limit that jurisdiction in any way.
Without any answers at all sec. 24 of Art. 47 denounced
the transfers as *prima facie* fraudulent and the Court would
have been justified in proceeding to an adjudication of in-
solvency and the consequent annulment of the transfers.
As, then, that Court had incontestably the jurisdiction to
hear and decide upon the validity and good faith of these
transfers under the petition, it was clearly the duty of Rosen-
thal and Goldman to remain in the  case and to controvert
the averments of the tenth and eleventh paragraphs, if they
desired to prevent the transfers from being set aside ; but
they had the undoubted right to withdraw from the case,
just as they had, in the first instance, the right not to be-
come parties to  it.    But that withdrawal was at their
peril, for they could, by withdrawing, neither deprive the
Court of jurisdiction nor retard or delay the petitioning
creditors in having every averment of their petition passed
upon by the Insolvent Court.    Having announced their in-
tention to withdraw their answers, which asserted the valid-
ity of the transfers ; and having actually withdrawn them,
the Court of Common Pleas rightly adjudicated Buckner an
insolvent, and with that adjudication these transfers fell and
were vacated, because there were practically no longer any
answers in the case to rescue the transfers from that fate.
The learned Judge was consequently right in refusing to go
on with the trial, because, as he held, there was nothing be-
fore him to be tried.    The fact that the withdrawal of the
answers was without prejudice amounts to nothing.    That

part of the orders was simply inoperative, because the withdrawal of the answers, in whatever *form* it was made was, of necessity, *in effect* unqualified.   And it was unqualified because there is no other proceeding to which resort can be had.   It is perfectly true this may not result as Rosenthal and Goldman intended; but we are unwilling to put a construction on the insolvent law which will lead to a defeat of its salutary provisions in many instances; or at least will often be conducive to such delay in actual practice as will seriously impair and cripple the efficacy of the whole insolvent system.

Distinct issues were made by the answers of Rosenthal and Goldman.   The Court of Common Pleas as a Court of Insolvency had the undoubted jurisdiction to try those issues, and the announcement that those parties would withdraw their answers and, therefore, make no further contest as to the truth of the matters averred in the tenth and eleventh paragraphs of the petition, did not and could not deprive the Court of its power to proceed in the case to an adjudication, with all the incidents and consequences which that adjudication involved.

We are not unmindful of the general principle that a judgment in one tribunal only operates as an estoppel to a subsequent proceeding when the matter in issue in the second inquiry has been determined between the same parties in the first; and that where the first judgment may have been founded on one or more of many grounds it is generally competent to show that it was not in fact based on the particular ground relied on in the subsequent action, unless pursuant to settled principles a contrary presumption prevails. But we are not invoking in this case the doctrine of *res adjudicata* or estoppel.   The adjudication in insolvency is an adjudication *in rem* and upon that ground it is held to fix and determine the *status* of the debtor and the *status* of the property alleged in the petition to have been unlawfully dealt with by him.   For that reason a party who has had an opportunity to maintain in the Insolvent Court the va-

lidity of a transfer made to him and which transfer the petition against the debtor impeaches, will not be allowed after standing by without contest, to litigate the same matter in some other forum; more especially after having voluntarily appeared in the Insolvent Court, and then having subsequently abandoned the very same issue he had set up there. The law having given him a standing in Court, it will not suffer him, when he has deliberately refused to avail of it, to assert the same claim in some other tribunal.

As the adjudication of Buckner to be an insolvent carried with it the transfers mentioned, the Court was right in not allowing a trial to be had upon ss ue s already determined; and as the petitioning creditors secured by that adjudication all they could have been entitled to if a trial had taken place and had resulted in a finding on every issue for them, they were not prejudiced by the orders allowing Rosenthal and Goldman to retire from the proceedings.

There being no error in the action of the Court as we have interpreted it, the rulings complained of will be affirmed with costs.

> *Rulings affirmed with costs, and case
> remanded for further proceedings,
> striking down these transfers.*