## INDUSTRIAL SERVICE, INC., *v.* R. HYNSON ROGERS ET AL., TRUSTEES.

[No. 96, October Term, 1932.]

*Decided January 19th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*George F. Flentje, Jr.,* and *Alfred F. Walker,* with whom was *J. Francis McCormick* on the brief, for the appellant.

*Charles C. Wallace,* with whom were *Wallace & Hammond* on the brief, for the appellees.

DIGGES, J., delivered the opinion of the Court.

By deed dated April 13th, 1932, George W. States and Lulu States, his wife, citizens and residents of Kent County, Maryland, conveyed all of their property, consisting altogether of personalty, to R. Hynson Rogers, Harrison W. Vickers, and S. Scott Beck, in trust for the benefit of their creditors. Jurisdiction of the trust was assumed by the Circuit Court for Kent County in equity by order of May 4th, 1932. Subsequently, on June 7th, 1932, separate involuntary petitions in insolvency were filed against George W. States and Lulu States, and each of them was adjudged an insolvent debtor by order of the Circuit Court for Kent County, dated June 8th, 1932. The trustees sold the insolvents' property, with the assent of the appellant, who held a chattel mortgage, its rights being reserved against the proceeds of sale. On February 15th, 1932, George W. States and Lulu States executed and delivered to the appellant a chattel mortgage on their personal property to secure an indebtedness of $300, evidenced by a note of like amount, with interest at the rate of three and one-half per cent. per month. This mortgage was recorded among the chattel records of Kent County on February 16th, 1932.

The insolvency proceedings were instituted within a period of four months after the date of the chattel mortgage. There is no claim nor any evidence of actual fraud in the case.

The claim of the appellant is that its chattel mortgage constitutes a preferred claim against the proceeds of sale of the insolvents' property. The trustees in insolvency for the benefit of all creditors deny this contention. By its order of July 14th, 1932, the Circuit Court for Kent County in equity decreed that the appellant is entitled to receive, as a preferred claim, from the proceeds of sale of the property of George W. States and Lulu States, insolvents, the amount of $62.34, with interest thereon from March 15th, 1932, at the rate of three and one-half per cent. a month, and that the appellant should participate as a general unsecured creditor in the balance of the proceeds of sale to the amount of $237.66, with interest at the same rate from March 15th, 1932. It is from that order the appeal here is taken.

From the agreed statement of facts contained in the record it is shown that on September 13th, 1930, George W. States and Lulu States made application to the appellant for a loan of $300, which was granted, and a chattel mortgage executed by them to the appellant, covering personal property belonging to the borrowers and located on a farm in Kent County which the borrowers were then cultivating as tenants. This mortgage was never recorded, but was kept in the office of the appellant in Baltimore. The original loan of $300 was from time to time reduced until January 16th, 1931, when the sum of $238.25 was owing to the appellant. On that day the borrowers applied for an increase to the original amount of $300, which was granted, and a new note taken for that amount dated January 16th, 1931. The amount represented by that note was gradually reduced until on October 14th, 1931, the balance due thereon was $204.45, on which date the borrowers again made application for an additional advance, and again the indebtedness was increased to $300 and a new note taken for that amount, dated October 14th, 1931. Finally this last note was gradually reduced until February 15th, 1932, at which time there was due to the appellant on said note a balance of $237.66; and on that date the borrowers applied for an increase of their loan, which was granted, again increasing the indebtedness to

$300, by paying in cash to the borrowers $62.34, canceling their old indebtedness, and taking a new note for $300, this note bearing date February 15th, 1932, and secured by a chattel mortgage of the same date, which, as stated, was recorded in Kent County on February 16th, 1932. At the time of the execution of this chattel mortgage, the borrowers submitted to the appellant a financial statement which showed that they were not then insolvent. On February 15th, 1932, the date of the last note and chattel mortgage, the notes and evidences of indebtedness previously held by the appellant were marked "paid" and returned to the borrowers. The chattel mortgage which had been originally taken, but which had not been recorded, was also marked "paid" and returned to them. The appellant's Exhibit No. 1, being a daily report record as of February 15th, 1932, showing the indebtedness of George W. States and wife of $237.66, has stamped on its face: "Paid, February 15, 1932," and also: "Renewed. Date: 2-15-32. Amount $300."

Section 14 of article 47 of the Code provides: "No deed or conveyance executed, or lien created by any person being insolvent or in contemplation of insolvency, save as hereinafter provided, shall be lawful or valid if the same shall contain any preference, save such as result from operation of law, and save those for the wages or salaries to clerks, servants, salesmen and employees contracted not more than three months anterior to the execution thereof; and all preferences, with the exceptions aforesaid, shall be void, howsoever the same may be made; provided, the grantor or party creating said lien or preference shall be proceeded against under section 23 of this article, or shall apply for the benefit of this article under section 1 within four months after the recording of the deed or conveyance or the creation of said lien or preference, and shall be declared or shall become, under the provisions of this article, an insolvent; provided, that nothing in this section shall apply so as to set aside or render invalid the lien of any such judgment, mortgage or other conveyance executed by the debtor for money *bona fide* loaned or paid at the time of the creation of such judgments,

mortgage or conveyance, but such shall remain a valid and subsisting lien, although the debtor may be proceeded against under or may apply for the benefit of this article." Section 1 of article 47, referred to, makes provision for voluntary application by the insolvent for the benefits secured by that article; and section 23 provides for the involuntary adjudication of insolvency. By the express provisions of section 14 above quoted, all deeds or conveyances executed or liens created by any person being insolvent or in contemplation of insolvency shall be void, howsoever the same may be made, · if the grantor or party creating said lien or preference shall be proceeded against as an insolvent or shall apply for the benefit of the insolvent article within four months after the recording of the conveyance or the creation of the lien or preference. All such conveyances, liens, or preferences are void unless they be within the exceptions specifically set forth in section 14.

The appellees contend that only $62.34, which was actually paid in cash by the appellant to the borrowers on February 15, 1932, is embraced within those exceptions. The position taken by the appellant is that the transaction of February 15, 1932, was a new loan in the amount of $300, and therefore the whole of said amount is within the exception and is entitled to preference. We do not think that a true construction of that transaction would result in affording a preference in the amount claimed by the appellant.

Assuming that the original chattel mortgage, dated September 13th, 1930, would be valid as between the appellant and the mortgagors as a binding lien, it nevertheless did not create a lien or preference as against other creditors; and, as to them, it did nothing more than evidence an unsecured debt due the appellant of $237.66. On February 15th, 1932, the chattel mortgage executed as of that date created a lien and gave a preference to the appellant for the unsecured previous indebtedness as well as $62.34 then advanced by the appellant. This latter amount is given a preference in the insolvents' estate by the positive language of the statute, and the attempted lien for the previous indebtedness

is stricken down and declared to be invalid as a lien or preference by equally conclusive language.

In *Nicholson v. Schmucker*, 81 Md. 459, 32 A. 182, 183, speaking of sales and conveyances *bona fide* made, the court said: "This act provides that 'nothing herein shall apply so as to set aside or render invalid the lien of any such judgment, mortgage or other conveyance executed by the debtor, for money *bona fide* loaned or paid at the time of the creation of such judgment, mortgage or conveyance, but such shall remain a valid and subsisting lien, although the debtor may be proceeded against or may apply for the benefit of the insolvent law under this act'." In *Hinkleman v. Fey*, 79 Md. 112, 28 A. 886, it was said that the act was passed for the purpose of removing all doubt about *bona fide* loans made at the time. In the *Nicholson* case the court cited with approval the following language from *Bush v. Boutelle*, 156 Mass. 167, 30 N. E. 607: "The money was lent and the security taken, for aught that appears, in good faith. It is not enough to avoid the conveyance that the party was insolvent when it was made, and knew himself to be so, if the conveyance was not made to secure an antecedent debt, or with any intention on the part of the defendant to defeat the provisions of the insolvent law, or with reason to believe that such was the purpose of the insolvent, but was given as security for a debt then incurred." This court then proceeded: "Of course, it would be otherwise if the agreement to give security was executory, and at the time the security was given there was clearly an antecedent debt. *Bentley v. Wells*, 61 Ill. 60."

In *Vogler v. Rosenthal*, 85 Md. 37, 36 A. 650, 652, Judge McSherry, speaking for the court, said: "It is wholly immaterial whether the preferences appear upon the face of a written instrument, or whether they are created by a payment of money, a transfer of property, or otherwise; they all alike are denounced as void, and the adjudication of the debtor to be an insolvent *ipso facto* strikes them down when they are made the basis of that adjudication." In *Hodson v. Karr*, 96 Md. 476, 53 A. 1113, 1115, the court quoted

from *Cook v. Tullis,* 18 Wall. (85 U. S.) 332, 21 L. Ed. 933, wherein it was said: "An insolvent is not bound, in the misfortune of his insolvency, to abandon all dealings with his property. His creditors can only complain if he wastes his estate, or gives preferences in its disposition to one over another. His dealings will stand if it leaves his estate in as good plight and condition as previously;" and continuing said: "These considerations apply with equal force to the provisions of the insolvent law of this state. * * * Its provisions do not contemplate that any act of the debtor can amount to a preference, unless it operates to diminish the estate, or confers upon one creditor over another some advantage in the disposition of its estate. The preferences it denounces are those which secure or pay an antecedent debt."

It is obvious that $237.66 secured by the chattel mortgage of February 15th, 1932, was for an antecedent debt, and, if given preference, would diminish the estate and confer upon one creditor an advantage over others in the disposition of the estate. Our conclusion is that the chattel mortgage of February 15th, 1932, attempted to secure and give a lien for an antecedent debt to the extent of $237.66. This the statute condemns, and therefore prevents, the said sum of $237.66 being allowed as a preferred claim in the distribution; but that $62.34 represented cash advanced at the time of the execution of the chattel mortgage, and is entitled to a preference in the distribution of the insolvents' estate.

Agreeing with the conclusions reached by the lower court, its order of July 14th, 1932, will be affirmed.

*Order affirmed, with costs to the appellees.*